## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES ULYSSES LEWIS, III,        )
                                 )
                  Plaintiff,     )
                                 )
         v.                      )        1:21CV804
                                 )
KILOLO KIJAKAZI,                 )
Acting Commissioner of Social    )
Security,                        )
                                 )
                  Defendant.     )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, James Ulysses Lewis, III, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 259-60), alleging a disability onset date of July 1, 2019 (see Tr. 259).[1] Upon denial of that

---

[1] Plaintiff subsequently amended his alleged onset date to October 25, 2017 (see Tr. 98, 274). Plaintiff filed a prior application for DIB in January 2014 (see
(continued...)

application initially (Tr. 161-74, 184-87) and on reconsideration (Tr. 175-83, 193-97), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 198-99). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 92-137.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 69-87.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 46-48, 56-57, 66-67, 258, 337-41), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] last met the insured status requirements of the . . . Act on June 30, 2019.

. . .

2. [Plaintiff] did not engage in substantial gainful activity during the period from his amended onset date of October 25, 2017 through his date last insured of June 30, 2019.

. . .

3. Through the date last insured, [Plaintiff] had the following severe impairments: post-traumatic stress disorder (PTSD); major depressive disorder (MDD)[;] anxiety disorder; plantar fasciitis; degenerative joint disease (DJD)[;] rotator cuff tear with impingement; obesity; degenerative disc disease (DDD)[;] facet disease; and obstructive sleep apnea (OSA).

---

[1] (...continued)
Tr. 72), which an ALJ ultimately denied in a decision dated November 10, 2015 (Tr. 142-57). On December 26, 2016, Plaintiff filed another application for DIB, which the SSA denied on April 26, 2017, and which Plaintiff did not pursue further. (See Tr. 163.)

. . .

4.   Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform sedentary work . . . except [he] can lift and carry 10 pounds.  He can sit for up to 6 hours, and can stand and walk for up to 2 hours.  He can frequently reach, handle, finger and feel.  He can occasionally use ramps and stairs, balance, stoop, kneel, and crouch.  He can have no exposure to common workplace hazards including unprotected heights, dangerous machinery, and ladders, ropes or scaffolds.  He can perform simple, routine tasks and make simple work related decisions, but not at a production pace.  He can interact occasionally with supervisors, coworkers, and the public and he can tolerate occasional changes in the workplace setting.

. . .

6.   Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

10.  Through the date last insured, and considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [he] could have performed.

. . .

11.  [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from October 25, 2017, the amended alleged onset date, through June 30, 2019, the date last insured.

(Tr. 75-87 (bold font and internal parenthetical citations omitted).)

3

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard."  <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there

4

is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id.

5

(quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's failure to perform a proper function by function assessment of [Plaintiff's] contested limitations in [the ALJ's] RFC assessment and his failure to provide a logical bridge between the evidence and his RFC conclusions is error that prevents the ALJ's decision from being supported by substantial evidence" (Docket Entry 12 at 6 (bold font and single-spacing omitted)); and

2) "[t]he ALJ erred in assessing the impact of [Plaintiff's] mental impairment the [sic] RFC" (<u>id.</u> at 13 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (<u>See</u> Docket Entry 14 at 8-21.)

---

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## 1. Function-by-Function Assessment

Plaintiff's first issue on review argues that "[t]he ALJ's failure to perform a proper function by function assessment of [Plaintiff's] contested limitations in [the ALJ's] RFC assessment and his failure to provide a logical bridge between the evidence and his RFC conclusions is error that prevents the ALJ's decision from being supported by substantial evidence" (Docket Entry 12 at 6 (bold font and single-spacing omitted)), in violation of Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), and Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996) ("SSR 98-6p") (see Docket Entry 12 at 10). In particular, Plaintiff notes that, "[w]hile the ALJ acknowledge[d ] objective evidence . . . [which] document[ed Plaintiff's] complaints of right shoulder pain" (id. at 7 (citing Tr. 83, 626, 630, 677, 680, 1314)), "the ALJ fail[ed] to discuss the additional evidence in the record that [wa]s consistent with [Plaintiff's] testimony and allegations regarding the limitations he experience[d] secondary to his right shoulder impairment" (id.; see also id. at 6-10 (detailing Plaintiff's testimony regarding his right shoulder impairment and describing medical evidence concerning Plaintiff's right shoulder condition (citing Tr. 122-24, 580-87, 626, 630, 677, 680, 800-03, 872-74, 884-86, 901, 936-38, 1314, 1449-53, 1560, 1620-22, 1632-34, 1648-50, 1672-73))).

9

Plaintiff further faults the ALJ for discounting Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of his right shoulder symptoms "based on a lack of objective evidence" (id. at 8 (referencing Tr. 82, and citing 20 C.F.R. § 404.1529, and Social Security Ruling 16-3p, Titles II and XVI; Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"))), as well as for "fail[ing] to explain how he accounted for [Plaintiff's] other severe physical impairments of plantar fasciitis, degenerative joint disease, degenerative disc disease, facet disease and [OSA] in the RFC" (id. at 12 (citing Tr. 76)). Plaintiff deems the ALJ's errors "harmful" (id.), because "[t]he VE testified that a restriction to occasional use of [an individual's] dominant arm would be work preclusive" (id. (citing Tr. 133)). Those contentions lack merit.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 404.1567. Any non-exertional limitations

may further restrict a claimant's ability to perform jobs within an exertional level.  See 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination.  See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014).  However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion."  Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted).  As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . .  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, 1996 WL 374184, at *1.

The United States Court of Appeals for the Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand.  See Mascio, 780 F.3d at 636–37.  Specifically, it stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636,

11

but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).  Here, the ALJ did not perform an express function-by-function analysis of Plaintiff's manipulative abilities (see Tr. 82-84); however, no basis for remand exists, because the ALJ's decision nevertheless supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and his findings that Plaintiff's right shoulder condition (A) qualified as a severe impairment (see Tr. 76), but (B) did not prevent him from performing frequent reaching, handling, fingering, and feeling (see Tr. 81).

As a threshold matter, Plaintiff's argument that "[t]he ALJ's dismissal of [Plaintiff's] allegations regarding his symptoms" on the basis of the lack of supporting objective medical evidence constitutes "error under the guidance in 20 C.F.R. § 1529 and SSR 16-3p" (Docket Entry 12 at 7 (italics omitted)) fails, because neither Section 404.1529 nor SSR 16-3p prohibits an ALJ from relying on objective evidence as one part of the analysis of a claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms.  Indeed, Section

12

404.1529(c) directs ALJs to consider a claimant's medical history, medical signs and laboratory findings, daily activities, testimony about nature and location of pain, medication and other treatment used to alleviate pain, along with medical opinions from examining and non-examining sources in evaluating a claimant's subjective symptom reporting. See 20 C.F.R. § 404.1529(c); see also 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain . . . established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether [an] individual is under a disability." (emphasis added)).

Coordinately, SSR 16-3p states as follows regarding the role of objective medical evidence in evaluating the intensity, persistence, and limiting effects of symptoms:

> Symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques. However, objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . . . [An ALJ] must consider whether a[ claimant]'s statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.
>
> The intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence. Examples such as reduced joint motion, muscle spasm, sensory deficit, and motor disruption illustrate findings that may result from, or be associated with, the symptom of pain. . . . .

13

> [An ALJ] will not disregard a[ claimant]'s statements
> about the intensity, persistence, and limiting effects of
> symptoms <u>solely</u> because the objective medical evidence
> does not substantiate the degree of impairment-related
> symptoms alleged by the [claimant]. A report of minimal
> or negative findings or inconsistencies in the objective
> medical evidence is <u>one of the many factors</u> [an ALJ] <u>must</u>
> consider in evaluating the intensity, persistence, and
> limiting effects of a[ claimant]'s symptoms.

SSR 16-3p, 2017 WL 5180304, at *5 (emphasis added) (footnote omitted).

Here, in compliance with Section 404.1529 and SSR 16-3p, the ALJ relied on objective medical evidence as just <u>one part</u> of his analysis of Plaintiff's subjective symptom reporting. (<u>See</u> Tr. 83.) The ALJ also considered Plaintiff's ability to engage in daily activities (<u>see</u> Tr. 78-81, 85), and the opinion evidence (<u>see</u> Tr. 84; <u>see also</u> <u>id.</u> (ALJ noting that he "review[ed] the clinical and objective findings <u>in conjunction with the factors contained in SSR 16-3p</u>" (emphasis added)). Plaintiff simply has not shown that the ALJ violated Section 404.1529 or SSR 16-3p.

Turning to Plaintiff's assertions regarding the function-by-function analysis, those assertions fall short because the ALJ's evaluation of Plaintiff's subjective symptom reporting elucidates the ALJ's RFC findings regarding Plaintiff's abilities to reach, handle, finger, and feel. In that regard, the ALJ explicitly acknowledged Plaintiff's statements that, <u>several months after his DLI</u>, "he underwent a surgical repair procedure, but continue[d] to have ongoing limitations that affect[ed] his ability to lift more

14

than [a] one-half gallon of milk and to reach in front of him," and that, "[w]hen reaching overhead, he use[d] his left arm." (Tr. 83 (referencing Tr. 121-24).) The ALJ, however, also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." (Tr. 82.) The ALJ supported that finding by observing that Plaintiff could "bathe, eat, and dress without assistance" (Tr. 78 (citing Tr. 529)), "ha[d] completed periods of full time work <u>during the relevant period</u>," including "working as much as forty hours per week making $8.00 per hour under the table" (<u>id.</u> (emphasis added) (citing Tr. 1726-27)), and could "tak[e] care of his mother" (Tr. 79 (citing Tr. 1060)), as well as "shop[ and] drive" (Tr. 80). Those activities support the ALJ's finding that, <u>during the relevant period from October 25, 2017, to June 30, 2019</u>, Plaintiff remained able to frequently perform manipulative movements (see Tr. 81). (<u>See</u> Tr. 85 ("Further supporting the [ALJ]'s [RFC] assessment, the evidence shows [Plaintiff]'s activities of daily living are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.")).

Moreover, by pointing to record evidence Plaintiff believes supports greater limitations on his abilities to reach, handle, finger, and feel, he misinterprets this Court's standard of review. The Court must determine whether substantial evidence, i.e., "more

15

than a mere scintilla of evidence but . . . somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), supported the ALJ's findings regarding Plaintiff's manipulative abilities, and not whether other record evidence weighed against those findings, see Lanier v. Colvin, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

Furthermore, the evidence relied upon by Plaintiff would not have compelled the ALJ to limit Plaintiff to occasional manipulative movements in the RFC. As the Commissioner argues, "Plaintiff relies almost exclusively on evidence generated *after the [DLI]*" (Docket Entry 14 at 11-12 (footnote omitted) (citing Tr. 122-24 (Plaintiff's hearing testimony on April 26, 2021, regarding his current shoulder functioning), 580-83, 884-86, & 1632-34 (orthopedic visit on October 1, 2019, diagnosing rotator cuff tear), 583-84 & 1672-73 (physical therapy appointment dated July 5, 2019, and reflecting that Plaintiff continued to work as tech in warehouse), 585-87 (pre-surgical visit on November 20, 2019), 592 & 2011 (arthroscopy operative notes dated November 20, 2019), 626, 677, & 1314 (MRI of right shoulder identifying rotator cuff tear on September 17, 2019), 800-03 & 1560 (telephonic post-operative

16

orthopedic visit dated March 31, 2020), 872-74 & 1620-22 (orthopedic appointment on October 21, 2019), 896-97 (internal medicine treatment note dated September 23, 2019), 901 & 1648 (physical therapy session on September 3, 2019), 1449-53 (orthopedic follow-up via telephone on December 15, 2020), 1649-50 (primary care appointment reflecting right shoulder complaints dated August 22, 2019))), which "does not carry Plaintiff's burden of providing evidence and proving that he was disabled *during the relevant period*" (id.).

Moreover, Plaintiff cites only two pieces of evidence pertaining to his right shoulder impairments during the relevant period, neither of which would have compelled the ALJ to adopt greater manipulative restrictions in the RFC. The first piece consists of a treatment note from Plaintiff's primary care physician, Dr. David Bai Chang, dated April 30, 2019 (two months prior to the end of the relevant period) (Tr. 936-38), documenting multiple non-shoulder-related complaints as well as Plaintiff's report that his right shoulder ached when he reached upwards, that he "ha[d] some decreased [range of motion]," and that he "fe[lt] weak afterwards" (Tr. 936). On examination, Dr. Chang noted Plaintiff appeared in no acute distress (see Tr. 937), that he experienced right shoulder pain with a combination of external rotation and extension (see Tr. 937-38), and that he displayed a positive Neer's test for impingement (see Tr. 938). Dr. Chang

17

assessed "likely shoulder impingement vs muscle strain," ordered a shoulder x-ray, and prescribed Meloxicam and physical therapy. (Id.)  Notably, Dr. Chang did not record decreased range of motion or strength and did not issue work restrictions of any kind.  (See Tr. 936-38.)[6]  The second piece of evidence consists of an x-ray of Plaintiff's right shoulder taken on the same date (April 30, 2019), which reflected "[n]o evidence of acute fracture or dislocation" and "[h]ypertrophic degenerative changes of the acromioclavicular joint." (Tr. 630, 680.)  Consistent with the paucity of evidence pre-dating the DLI regarding Plaintiff's right shoulder impairments, the ALJ expressly recognized that the objective evidence "d[id] not support [Plaintiff's] allegations through the date last insured." (Tr. 82 (emphasis added).)[7]

    Plaintiff additionally maintains that "the ALJ "fail[ed] to explain how he accounted for [Plaintiff's] other severe physical impairments of plantar fasciitis, degenerative joint disease, degenerative disc disease, facet disease and [OSA] in the RFC" (Docket Entry 12 at 12 (citing Tr. 76)), noting "that he

_____

[6] As the Commissioner notes, at the time of Plaintiff's appointment on April 30, 2019, he remained employed in a furniture warehouse without job modifications. (See Docket Entry 14 at 12 (citing Tr. 103, 279, 295).)

[7] The state agency medical consultants considered the same pre-DLI evidence and deemed it insufficient to find a medically determinable right shoulder impairment for the period beginning on April 27, 2017 (the day after the last unfavorable decision on Plaintiff's 2016 prior DIB claim) and ending July 1, 2019 (the day after Plaintiff's DLI).  (See Tr. 169-70, 177-79.)  The ALJ thus appeared to give Plaintiff the benefit of the doubt in finding those opinions "not persuasive" (Tr. 84) and in determining that Plaintiff's DJD and rotator cuff tear qualified even as severe impairments at step two of the SEP (see Tr. 76).

experience[d] swelling of the lower extremities, chronic pain and fatigue as a result of his combination of physical impairments" (id. at 13).  Plaintiff, however, neither provides the Court with citations to evidence demonstrating the existence and extent of those symptoms during the relevant period nor explains how those symptoms should have compelled the ALJ to adopt greater, work-preclusive restrictions in the RFC (see id. at 12-13), which already limited Plaintiff to 10 pounds of lifting/carrying, two hours of standing/walking, occasional climbing of ramps and stairs, balancing, stooping, kneeling, and crouching, and no climbing of ladders, ropes, and scaffolds (see Tr. 81).  That failure precludes relief.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do.").

In sum, Plaintiff's first issue on review fails to demonstrate prejudicial error by the ALJ.

### 2. Mental RFC

In Plaintiff's second and final assignment of error, he maintains that "[t]he ALJ erred in assessing the impact of [Plaintiff's] mental impairment the [sic] RFC."  (Docket Entry 12

19

at 13 (bold font and single-spacing omitted).) More specifically, Plaintiff maintains that he cannot "tolerate even occasional interaction with others, especially supervisors, on a sustained basis" (id. at 18) and, in support of that assertion, points to his testimony that he experiences "anxiety, including daily flashbacks" (id. at 13 (citing Tr. 118)), "panic attacks" (id. (citing Tr. 111, 113)), "mistrust of others[ and] hypervigilance" (id. (citing Tr. 107-08, 111-12, 114-15)), "agitation and restlessness" (id. (citing Tr. 114)), and "difficulty tolerating supervision" (id. (citing Tr. 117)), as well certain medical evidence of record (see id. at 14-17 (citing Tr. 140-41, 314, 363-65, 389-90, 527-28, 532-33, 554-56, 564-66, 570-71, 576, 814, 891, 977, 992, 998, 1060-61, 1076-79, 1518-20, 1527, 1532, 1609, 1730, 1800-01, 1833-38)). According to Plaintiff, "[d]espite th[at] testimony and evidence, the ALJ . . . only restricted [Plaintiff] to "'interact[ing] occasionally with supervisors, coworkers, and the public." (Id. at 17 (citing Tr. 82).) Plaintiff further notes that "[t]he VE testified that a limitation restricting a hypothetical individual to experiencing one day a month where that individual was unable to interact, on 'a less than occasional basis to no contact basis with supervisors, coworkers and the public, due to flares form [sic] mental health conditions' would be work preclusive" and "more along the lines of supported employment, versus competitive employment." (Id. at 14 (citing Tr. 133-34).) Plaintiff has not established

grounds for relief, because the ALJ's decision cites to substantial evidence supporting the limitation to occasional interaction with coworkers, supervisors, and the public.

To begin, the ALJ's evaluation of Plaintiff's subjective symptom reporting supports the ALJ's RFC finding that Plaintiff can occasionally interact with others. At step three of the SEP, the ALJ acknowledged Plaintiff's "alleg[ations] that he ha[d] difficulty engaging in social activities, getting along with others, dealing appropriately with authority, and spending time in crowds" (Tr. 80; see also Tr. 83 ("[Plaintiff] suffers flashbacks daily. [He] testified he does not like being around people or having people yelling at him. . . . He has panic attacks when he is around two or more people. [He] testified he has two panic attacks per month.")), but also recognized that, "according to [Plaintiff's] own statements, [he wa]s also able to get along with others, spend time with family and attend family functions, take care of his mother, and live with others" (Tr. 80 (emphasis added)).[8] The ALJ thereafter found that Plaintiff's "statements

_____

[8] Plaintiff contends that the ALJ "failed to consider the extent or the circumstances surrounding the activities he cites to support his conclusions," and points out that "treatment records specifically note that [Plaintiff] did not feel comfortable attending family gatherings." (Docket Entry 12 at 17-18 (citing Tr. 992); see also id. at 17 (quoting Woods, 888. F. 3d at 694 ("'[A]n ALJ may not consider the type of activities a claimant can perform without also consider [sic] the extent to which [he] can perform them.'").) The ALJ, in describing Plaintiff's statements to consultative psychological examiner Dr. Bradford on April 24, 2017, noted that Plaintiff "reported attending family functions" (Tr. 78 (citing Tr. 528); see also Tr. 528 ("[Plaintiff] states 'I try to stay at home as much as possible.' He said he cannot go to movies. He only goes to family functions.")), and then reiterated that Plaintiff could "attend family functions" when finding a moderate limitation in interacting with others at step three of
(continued...)

21

concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (Tr. 82), and buttressed that finding by noting that Plaintiff "lived with others" (Tr. 78), maintained relationships with all five of his children (see id. (citing 529-30)), "ha[d] completed periods of full time work during the relevant period," including "working as much as forty hours per week making $8.00 per hour under the table" (id. (emphasis added) (citing Tr. 1726-27)), and "t[ook] care of his mother" (Tr. 79 (citing Tr. 1060)). Those social activities support the ALJ's finding that Plaintiff remained able to occasionally interact with others (see Tr. 81). (See Tr. 85 ("Further supporting the [ALJ]'s [RFC] assessment, the evidence shows [Plaintiff]'s activities of daily living are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.")).

The ALJ's evaluation of the opinion evidence further supports the ALJ's determination that Plaintiff could occasionally interact with others. In that regard, the ALJ found that the state agency

[8] (...continued)
the SEP (Tr. 80). In contrast, the record reflects that Plaintiff reported, on December 31, 2018, that he "avoids crowds and does not even feel comfortable in family gatherings" and, "because he feels hyperalert, he does not enjoy being in groups of people and feels alienated from his family." (Tr. 998.) Because the former statement occurred prior to the relevant period and the latter statement occurred within the relevant period, the record does not provide support for the ALJ's statement that, during the relevant period, Plaintiff remained able to "attend family functions" (Tr. 80). However, given the significant other evidence supporting the ALJ's limitation to occasional interaction with others in the mental RFC, as discussed above and below, this minor overstatement by the ALJ does not render his interaction finding unsupported by substantial evidence.

psychological consultants' opinions that insufficient evidence existed during the relevant period to assess Plaintiff's mental impairments "ha[d] no probative value and [we]re not persuasive." (Tr. 81; see also Tr. 84.)  On the other hand, the ALJ deemed only "partially persuasive" (Tr. 78; see also Tr. 84) consultative psychological examiner Dr. Daniel W. Bradford's opinions that Plaintiff would experience marked difficulty interacting with co-workers and the public (see Tr. 533).  Thus, the ALJ struck a balance between opposing opinions and found Plaintiff moderately limited in social interaction (see Tr. 80) and capable of occasional interaction with others (see Tr. 82).

The ALJ's discussion of Plaintiff's mental health treatment additionally explains the ALJ's interaction limitation in the mental RFC.  The ALJ made the following pertinent observations:

- a social worker contacted Plaintiff on October 25, 2017 and "noted [Plaintiff] was polite and thoroughly engaged during the contact," and Plaintiff reported "no emergent . . . psychiatric concern" (Tr. 79 (citing Tr. 1809));

- at "a routine medication management appointment" on April 30, 2019, Plaintiff "reported feeling better on his current medications" in "that he felt less depressed and calmer" (id. (citing Tr. 1686-88)), and "[h]is mood was 'relaxed' and his affect was congruent" (Tr. 80 (quoting Tr. 1687)); and

- "the medical evidence shows that [Plaintiff] was described as pleasant and cooperative" throughout the relevant period (Tr. 80; see also Tr. 1045 ("calm, cooperative and receptive to contact"), 1048 ("calm, cooperative and receptive to contact"), 1077 ("cooperative, pleasant, polite"),

23

1086 ("calm and cooperative"), 1098 ("polite and thoroughly engaged")).[9]

Moreover, by citing to record evidence that Plaintiff believes demonstrates that he cannot tolerate even occasional interaction with others, he misinterprets this Court's standard of review. The Court must determine whether substantial evidence, i.e., "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), supported the ALJ's finding regarding Plaintiff's ability to interact, and not whether other record evidence weighed against that finding, see Lanier, 2015 WL 3622619, at *1 ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

Furthermore, the evidence Plaintiff relies upon would not have compelled the ALJ to adopt a less-than-occasional, i.e., work-preclusive, interaction limitation in the mental RFC. (See Docket Entry 12 at 13 (summarizing Plaintiff's testimony regarding his

---

[9] The medical evidence both pre-dating and post-dating the relevant period similarly reflects that Plaintiff's providers consistently found him pleasant, cooperative, calm, and receptive to the interaction. (See Tr. 363 ("pleasant, cooperative"), 527 & 530 ("cooperative"), 553-54 ("cooperative"), 557 ("polite and cooperative"), 574 ("calm, cooperative and receptive"), 582 ("cooperative"), 662, 777, & 798 ("calm, cooperative and receptive to contact"), 805, 818-19 ("cooperative and receptive to contact"), 821-23, 827 ("calm, cooperative and receptive to contact"), 824 & 828 ("calm and cooperative"), 836, 838, 869, 875, & 877-78 ("calm, cooperative and receptive to contact"), 895 ("calm and cooperative"), 900, 1419, 1443, 1476, & 2047 ("calm, cooperative and receptive to contact"), 1425, 2029, & 2049 ("cooperative").)

24

alleged difficulty with social interaction (citing Tr. 107-08, 11-15, 117-18)), 14-17 (detailing medical evidence of interaction difficulty (citing Tr. 140-41, 314, 363-65, 389-90, 527-28, 532-33, 554-56, 564-66, 570-71, 576, 814, 891, 977, 992, 998, 1060-61, 1076-79, 1518-20, 1527, 1532, 1609, 1730, 1800-01, 1833-38)).) That evidence reflects either Plaintiff's <u>subjective symptom reporting</u> (<u>see</u> <u>id.</u> at 13 (citing Tr. 107-08, 11-15, 117-18)) which, as discussed above, the ALJ properly discounted (<u>see</u> Tr. 82), a VA disability rating decision finding Plaintiff 100% disabled due to PTSD effective May 13, 2019 (<u>see</u> Docket Entry 12 at 16 (citing Tr. 140-41)), which the ALJ acknowledged (<u>see</u> Tr. 83) but did not have any obligation to analyze or credit, <u>see</u> 20 C.F.R. § 404.1504 ("Other governmental agencies . . . such as the [VA] . . . make disability . . . decisions for their own programs using their own rules. . . . Therefore . . . [an ALJ] will not provide any analysis in [the] determination or decision about a decision made by any other governmental agency . . . ."), or mental health treatment <u>outside of the relevant period</u> in this case (<u>see</u> Docket Entry 12 at 14-17 (citing Tr. 314 (Plaintiff's Disability Report - Appeal claiming worsening of mental symptoms on <u>December 17, 2020</u>), 363-65 & 1833-35 (routine medication management visit on <u>July 7, 2016</u>), 389-90 (routine medication management appointment dated <u>October 27, 2015</u>), 527-34 (Dr. Bradford's consultative psychological examination on <u>April 24, 2017</u>, conducted as part of Plaintiff's

25

prior, denied application for DIB), 554-56, 576-78, & 1518-20 (telephonic psychiatric visit dated July 29, 2020), 564-66 & 1532 (psychiatric treatment via telephone on June 25, 2020), 570-71 & 1527 (VA homeless program social worker note dated July 1, 2020), 814 (routine medication management appointment on March 10, 2020), 891 (VA homeless program social worker note dated September 25, 2019), 1609-10 (routine medication management note dated November 5, 2019), 2045 (case management note on March 1, 2021)))).

Moreover, the evidence Plaintiff cites regarding his difficulty with social interaction during the relevant period (id. at 14-17 (citing Tr. 977, 992, 998, 1060-61, 1076-79, 1730, 1800-01)) reflects that Plaintiff complained of heightened anxiety in November 2017 after he had missed his last two mental health appointments and stopped taking psychiatric medication (see Tr. 1076-79, 1800-01). Thereafter, the cited records document that he experienced anxiety, occasional depression, and some anger dealing with issues such as homelessness, disqualification from the VA's homeless program due to income earned from full time work, and an arrest warrant arising out of Plaintiff's child support arrearage. (See Tr. 977, 992, 998, 1060-61, 1730.) Those notes simply would not have compelled the ALJ to adopt work-preclusive interaction limitations, especially in light of the fact that Plaintiff maintained full time employment (see Tr. 1726-27), lived with various family members (see Tr. 977 (living with niece), 992

26

(staying between two family members), 1047 ("couch surfing between friends")), and remained cooperative, calm, polite, and engaged throughout his treatment during the relevant period (<u>see</u> Tr. 1045, 1048, 1077, 1086, 1098, 1809).

Based on the foregoing analysis, Plaintiff has not shown that the ALJ erred in finding Plaintiff capable of occasional interaction with others and thus his second and final assignment of error falls short.

## III. CONCLUSION

Plaintiff has not established errors warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

    /s/ L. Patrick Auld
       **L. Patrick Auld**
**United States Magistrate Judge**

January 9, 2023